U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - ALEXANDRIA

APR 1 9 2007

ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

## ALEXANDRIA DIVISION

| | |
|---|---|
| **J.B. HYATT AND LOUELLA HYATT** | **CIVIL ACTION NO. 06-2316** |
| **versus** | **JUDGE TRIMBLE** |
| **AMERICAN CITADEL GUARD INC. AND VALERO REFINERY CORP.** | **MAGISTRATE JUDGE KIRK** |

## MEMORANDUM RULING

Before the court is a motion to dismiss, or, in the alternative, motion for summary judgment filed by defendant American Citadel Guard, Inc. ("Citadel") [Doc. # 4]. For the reasons expressed herein, this motion will be GRANTED.

I.     **Background**

A.     **Relevant Facts**

Plaintiffs J.B. and Louella Hyatt allege that they were employed by Citadel as security guards. Citadel provided security services for Valero and plaintiffs were stationed at the Valero site as part of that security detail.

Mr. Hyatt alleges that he was diagnosed with depression in February of 2005 and informed Nola Morrow, his Safety Supervisor, of this diagnosis[1]. On February 14, 2005, Mr.

---

[1]Plaintiffs' Exhibit 1 at ¶¶ 3 - 4.

1

Hyatt wrote an e-mail which expressed his desire to be moved from his supervisory position[2].
On or about February 22, 2005 Mr. Hyatt was transferred from the Valero site to the International
Paint Corporation facility in Port Allen, Louisiana[3].

On or about March 22, 2005 Mr. Hyatt alleges that he was engaged in the hobby of bird
watching on the levee next to the Valero refinery[4]. Mr. Hyatt was equipped with a camera[5] while
on the levee, which drew the attention of local law enforcement. Valero is regulated by, among
other things, the Maritime Transportation Security Act ("MARSEC")[6] and its regulations. The
purpose of MARSEC is to provide increased security over facilities like Valero, which, in the
wake of September 11, 2001, are identified terrorist targets. Citadel employees, including Mr.
and Mrs. Hyatt, receive MARSEC training[7].

Mr. Hyatt was approached police and Valero security officers who informed him that he
was not allowed to take photographs of the refinery. In response, he moved "about half of a
mile" down the road and resumed his activities[8].

---

[2]Defendants' Exhibit 2; Defendants' Statement of Material Facts [Doc. # 4 - 2] at ¶ 12;
Plaintiffs' Statement of Contested Facts [Doc. # 23 - 3].

[3]Defendants' Statement of Material Facts [Doc. # 4 - 2] at ¶ 13; Plaintiffs' Statement of
Contested Facts [Doc. # 23 - 3].

[4]Plaintiffs' Exhibit 1 (Affidavit of J.B. Hyatt 3/28/07) at ¶ 7.

[5]Mr. Hyatt does not dispute that he was carrying a camera, but asserts that he was not
engaged in the taking of photographs near the Valero facility. Plaintiffs' Statement of Contested
Facts at ¶ 14.

[6]46 U.S.C. § 701 (2006); 33 U.S.C. § 1221 (2007); and 33 CFR 101.100 *et seq.* (2007)

[7]Defendants' Statement of Material Facts [Doc. # 4 - 2] at ¶¶ 5 - 6; Plaintiffs' Statement
of Contested Facts [Doc. # 23 - 3].

[8]Plaintiffs' Exhibit 1 (Affidavit of J.B. Hyatt 3/28/07) at pp. 2 - 3.

By letter dated March 28, 2005, Mr. Hyatt was terminated from his employment with Citadel due to his behavior of March 22, 2005[9]. Mrs. Hyatt, who was still stationed at the Valero site, received a termination letter on the same date, which listed unauthorized absences from her post as the reason for the action[10].

Plaintiffs visited the New Orleans Equal Employment Opportunity Commission ("EEOC") office on or about June 13, 2005, several days after retaining present counsel, and filled out a questionnaire and other preliminary forms[11]. Plaintiffs were also counseled, at that time, that the events alleged in their narratives did not demonstrate an adequate basis for the filing of claims against their former employer and asked whether or not the EEOC should relay such information to Mr. Scheurmann, plaintiffs' attorney. Plaintiffs apparently declined to have the EEOC relay this information and stated that they would speak with Mr. Scheurmann themselves[12].

Hurricane Katrina struck New Orleans in late August of 2005, spawning, among other catastrophes, a fire which destroyed Mr. Scheurmann's office which contained files and other records pertaining to Mr. and Mrs. Hyatt's case[13]. In the following months, Mr. Scheurmann became aware of "irregularities" regarding his associate at the time[14], who was later permanently

---

[9]Defendants' Exhibit 4.

[10]Defendants' Exhibit 13.

[11]Plaintiffs' Exhibit 1 (Affidavit of J.B. Hyatt) at ¶¶ 16 - 17.

[12]Plaintiffs' Exhibit 4.4 (Letter from EEOC Acting Field Director Keith Hill 5/8/06).

[13]Plaintiffs' Exhibit 3 (Affidavit of Dan M. Scheurmann 3/28/07) at ¶ 7.

[14]Plaintiffs' Exhibit 3 (Affidavit of Dan M. Scheurmann 3/28/07) at ¶¶ 9 - 10.

3

disbarred as a result of this misconduct[15].  Mr. Scheurmann assumed that his clients had filed all necessary paperwork in order to receive a right to sue letter and did not attempt to contact the EEOC regarding such a letter in March of 2006[16].  His telephone inquiries unsuccessful due to the EEOC office being displaced by Hurricane Katrina, Schuermann made a written request for a right to sue letter on March 29, 2006[17].  Plaintiffs were informed that they were not entitled to a right to sue letter because they had failed to timely file an actual charge with the EEOC and had, instead, only filed a questionnaire[18].  Plaintiffs requested numerous appeals of this denial and eventually were instructed to file a charge, but that the charge would  immediately be dismissed as untimely as it was not filed within 300 days of the alleged unlawful employment action[19].

      Plaintiffs filed the instant suit alleging retaliatory discharge under both state and federal law, as well as discrimination under the ADA.  Plaintiffs have informed us, in their memorandum in opposition to Citadel's motion, that they concede all state law claims, as well as the state law retaliation claim[20].  Therefore, the remaining issues to be determined by this court are whether plaintiffs' discrimination claim is time barred and, if not, whether plaintiffs have

---

[15]La. S. Ct. # 06-OB-2297

[16]Plaintiffs' Exhibit 3 (Affidavit of Dan M. Scheurmann 3/28/07) at ¶ 13.

[17]Plaintiffs' Exhibit 4.1 (Letter to Madoline Bealer 3/29/06).

[18]Plaintiffs' Exhibit 4.4 (Letter from Acting Field Director Keith Hill 5/8/06).

[19]Plaintiffs' Exhibit 4.10 (Letter from Director of Field Management Programs Cynthia Pierre 9/18/06).

[20]Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment [Doc. # 23] at p. 3.

sufficiently demonstrated proof of a prima facie case of discrimination under the ADA.

### B.   Applicable Standard

A motion to dismiss shall be treated as a motion for summary judgment when matters beyond the pleadings are considered. FED. R. CIV. P. 12(b), 56. Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, indicate that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(C); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 - 50 (1986); Am. Home Assurance Co. v. United Space Alliance, 378 F.3d 482, 486 (5th Cir. 2004). "A fact is material if it could affect the outcome of the lawsuit, and a dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." McInnis v. Alamo Community College Dist., 207 F.3d 276, 279 (5th Cir. 2000) citing Anderson, supra.

In a suit alleging disability discrimination under the ADA, we apply the burden shifting analysis enunciated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), when plaintiff presents only circumstantial evidence to support the claim. Under the rationale of McDonnell Douglas, plaintiff must establish a prima facie showing of discrimination by demonstrating that: (1) he is disabled as defined by the ADA or, in the alternative, is regarded as having such a disability by his employer; (2) he is qualified for his job; (3) he was subject to an adverse employment action which was caused by his disability; and (4) he was replaced by or treated less favorably than non-disabled employees. Daigle v. Liberty Life Insurance Co., 70 F.3d 394 (5th Cir. 1995); Burch v. Coca-Cola Co., 119 F.3d 305 (5th Cir.

5

1997).

If the plaintiff can satisfy all four elements of the prima facie case, the burden shifts to the defendant to articulate some legitimate and non-discriminatory reason for the adverse employment action. McInnis, supra, 207 F.3d at 280, citing Daigle, supra 70 F.3d at 396.  If the defendant can demonstrate a legitimate non-discriminatory reason for the adverse action, the burden shifts again to the plaintiff to demonstrate, by a preponderance of the evidence, that the reason offered by the employer was mere pretext for unlawful discrimination based on disability. Id.

As with all motions for summary judgment, mere conclusory statements or allegations unsupported by evidence shall not be sufficient to demonstrate a genuine issue of material fact or to accomplish burden shifting under the McDonnell Douglas analysis. SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1993).  If plaintiff fails to prove any of the elements of his prima facie case, or is unable to rebut the legitimate non-discriminatory reason offered by defendant, summary judgment in favor of the defendant is appropriate.

## II.    Analysis of Law and Arguments

### A.    Are plaintiffs' ADA claims foreclosed by the doctrine of res judicata?

Defendants allege that Mr. Hyatt's ADA claims are foreclosed by the doctrine of res judicata on the basis that he applied for and was denied unemployment benefits by the Louisiana Department of Labor, which found that he was discharged for misconduct[21].  As defendants point

---

[21]Exhibit 5 to Defendants' Statement of Material Facts.

Department of Labor, which found that he was discharged for misconduct[21].  As defendants point

out, this decision was appealed and affirmed twice and, finally, appealed to the 27th Judicial

District Court, Parish of St. Landry, which also affirmed the Department of Labor's denial of

unemployment benefits[22].  Defendants argue that the determinations of fact made by these

administrative agencies and the state court should be taken as true in the context of this

proceeding.  Namely, defendants argue that the agency and court findings that Mr. Hyatt engaged

in misconduct should not be re-litigated in federal court as they have been established in prior

proceedings[23].

     Res judicata is a legal doctrine which encompasses both claim and issue preclusion.

Claim preclusion is the most common alias of res judicata, while issue preclusion is often

referred to as "collateral estoppel."  <u>Thibodeaux by Thibodeaux v. Bowen</u>, 819 F.2d 76, 80 (5th

Cir. 1987) quoting <u>Migra v. Warren City School District Board of Education</u>, 465 U.S. 75, 77

n. 1, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984).  Defendants plead the collateral estoppel subset of res

judicata by arguing that the facts determined in prior administrative and state court proceedings

should be accepted as fact herein.  We do not agree.

     When asked to give res judicata effect to a prior state court judgment, as here, we must

apply the res judicata principles of the law of the state whose decision is set forth as a bar to

further litigation.  <u>Hernandez v. City of Lafayette</u>, 699 F.2d 734 (5th Cir. 1983) <u>citing</u> <u>ED</u>

<u>Systems Corporation v. Southwestern Bell Telephone Company</u>, 674 F.2d 453, 457 (5th Cir.

---

[21]Exhibit 5 to Defendants' Statement of Material Facts.

[22]Exhibits 6 - 8 to Defendants' Statement of Material Facts.

[23]Defendants' Motion for Summary Judgment [Doc. # 4] at pp. 4 - 6.

1982) and Southern Jam, Inc. v. Robinson, 675 F.2d 94, 97-98 (5th Cir. 1982). Louisiana law concerning res judicata is found in La. R.S. 13:4231 and is interpreted by courts as providing for the application of res judicata only when the following elements are satisfied: (1) there is a valid and final judgment between the parties, (2) the cause of action asserted in the second suit existed at the time of the final judgment in the first litigation, and (3) the cause of action asserted in the subsequent suit arose out of the same transaction or occurrence that was the subject matter of the prior litigation. Pratt v. Louisiana State University Medical Center in Shreveport, 921 So.2d 213 (La. App. 2 Cir. 2006), rehearing denied 2007 WL 602313 (La. App. 2 Cir. 2/28/07).

Considering these precepts, we must agree with the arguments advanced by plaintiffs on this issue. While the issue of whether or not Mr. Hyatt engaged in misconduct was adjudicated by several administrative agencies and affirmed by a Louisiana state court, we cannot deem such determinations as a bar to plaintiffs' claims under the ADA, as these claims could not have been adjudicated by the Louisiana Department of Labor or the state court. Therefore, the element requiring a final judgment from a court of competent jurisdiction cannot be satisfied in this case. It is inherent in the concept of res judicata that the party against whom the bar of claims or issues is asserted had the opportunity to raise the claim or issue in the first adjudication. Terrebonne Fuel & Lube, Inc. v. Placid Refining Co., 666 So.2d 624 (La. 1996), on remand 681 So.2d 1292 (La. App. 4 Cir. 1996). As we have expressed above, plaintiffs claiming damages under the ADA must prove a prima facie case of discrimination. The adjudication of Mr. Hyatt's unemployment benefits entitlement did not provide an opportunity for all claims and defenses present in this suit to have been raised. We find, therefore, that res judicata does not bar Mr. Hyatt's claims in the instant suit.

**B.   Are plaintiffs' ADA claims time-barred?**

Defendants allege that plaintiffs' claims under the ADA are time-barred due to the fact that plaintiffs failed to file a formal charge of discrimination with the EEOC within the applicable three-hundred (300) day delay. Plaintiffs claim that they are entitled to equitable tolling in this case because of alleged misrepresentations by the EEOC, as well as the unfortunate intervening events detailed above. Plaintiffs also claim that we should view the filing of a questionnaire as having the effect of a charge as an equitable consideration.

The ADA provides a two-step mechanism for addressing discrimination claims. First, persons claiming unlawful discrimination are required to file a charge with the EEOC within three-hundred (300) days of the alleged adverse employment action. The EEOC is vested with the discretion to file or decline to file a suit against the employer based on the information provided by the party making the charge. If the EEOC determines that there is no reasonable cause to believe that the allegations of discrimination exists or, in the alternative, chooses not to bring suit against the employer for some other reason, the EEOC will issue a right-to-sue letter. At this point, the aggrieved party has sufficiently exhausted all administrative remedies and may file an individual civil suit against the employer and must do so within ninety (90) days after receipt of the right-to-sue letter. 42 U.S.C. § 2000e - 5(b), (e), (f), 42 U.S.C. § 12117.

The evidence before us indicates that the allegedly unlawful employment action occurred on March 28, 2005 when both plaintiffs were fired from their employment with Citadel. Plaintiffs submit that they visited the EEOC office in New Orleans on or about June 13, 2005, several days after retaining the counsel of Mr. Scheurmann. A letter from EEOC Acting Field

9

Director Keith T. Hill, dated May 8, 2006[24], indicates that plaintiffs were instructed that the information they provided the EEOC did not constitute reasonable cause for the filing of a charge. The letter further indicates that Madoline Bealer, the investigator assisting plaintiffs during the June 13th meeting, knew from their forms that plaintiffs were represented by counsel and offered to speak with Mr. Scheurmann regarding her findings. The letter states that Ms. Bealer's notes indicate that plaintiffs declined her offer, explaining that they would relay the information to Mr. Scheurmann themselves. Plaintiffs did not address, in their brief, whether or not plaintiffs dispute the contents of this letter, except to say that plaintiffs relayed no message concerning the meeting to their attorney[25].

Plaintiffs' state that they believed that they filed a charge on June 13th and that they were not instructed that the questionnaire they completed was not sufficient to preserve their rights[26]. The evidence before us indicates that plaintiffs' counsel did not make any attempt to verify the status of the charge filed or to contact the EEOC in conjunction with the charge he believed had been filed until March 29, 2006[27]. Plaintiffs did not file formal charges of discrimination until September 1, 2006. These charges were dismissed on September 11, 2006 as untimely[28].

The equitable tolling doctrine provides that failure to file a charge of discrimination

---

[24]Exhibit 4.4 to Plaintiffs' Memorandum in Opposition [Doc. # 23]

[25]Exhibit 3 to Plaintiffs' Memorandum in Opposition [Doc. # 23]

[26]Plaintiffs' Memorandum in Opposition [Doc. # 23] at p. 20.

[27]Plaintiffs' Memorandum in Opposition [Doc. # 23] at pp. 20 - 21; Exhibits 3 and 4.1 to Plaintiffs' Memorandum in Opposition.

[28]Exhibits to Complaint [Doc. 1 - 2].

10

within the allotted time period may be excused in the following situations: (1) a pending action between the parties in an incorrect forum; (2) the claimant's unawareness of the facts supporting his claim because the defendant intentionally concealed such facts; and (3) the claimant was misled by the EEOC about his rights. <u>Manning v. Chevron Chemical Co.</u>, 332 F.3d 874, 880 (5th Cir. 2003), <u>cert. denied</u> 540 U.S. 1107, 124 S.Ct. 1060, 157 L.Ed.2d 892 (2004).

Plaintiffs assert the third scenario in this case, claiming that the EEOC failed to instruct them that, in completing a questionnaire, they had not filed a charge of discrimination and, at the expiration of the legal delay for filing such charge, would lose the right to bring suit under the ADA[29]. Plaintiffs do not, however, allege that they were given false information, i.e., that they were told that they had accomplished the act of filing a charge or that no charge was necessary for the filing of a suit. Such a showing is required to warrant equitable tolling on the basis of misleading information by the EEOC. It is insufficient for the plaintiff to show that the EEOC failed to give some relevant information. The plaintiffs must show that they were actively misled in the June 13th meeting. <u>Teemac v. Henderson</u>, 298 F.3d 452 (5th Cir. 2002). Plaintiffs do not allege such active misleading, but, instead, argue that they should have been told that they were not filing a charge.

Plaintiffs argue that, in some instances, the filing of a questionnaire has been given the effect of a formal charge and that such result is proper here. We disagree.

Equitable tolling is to be applied sparingly and courts have been reluctant to excuse delay when the evidence demonstrates, as here, that plaintiffs' failed to safeguard their own rights. This is particularly true when the claimant enjoys the benefit of counsel during the crucial delay.

---

[29]Plaintiffs' Memorandum in Opposition [Doc. # 23] at p. 20.

11

Irwin v. Department of Veterans Affairs, 498 U.S. 89, 96 (1990); Turner v. Johnson, 177 F.3d 390, 392 (5th Cir. 1998).

**III.    Conclusion**

In summary, we find that plaintiffs have failed to demonstrate justification for the application of equitable tolling in this case, as they have not alleged that they were actively misled by the EEOC, alleging, instead, that they were not given information needed to protect their rights.  As the charges necessary to preserve their rights were not filed within the three-hundred (300) day delay allowed by the ADA, we find that plaintiffs' claims are time-barred.

Finding that plaintiffs' claims are time-barred, we need not address whether or not plaintiffs have demonstrated a prima facie case of disability discrimination.  Plaintiffs' claims shall be dismissed with prejudice.


Alexandria, Louisiana

April  18 , 2007

                                                 _____
                                                 JAMES T. TRIMBLE, JR.
                                                 U.S. DISTRICT COURT JUDGE

12